UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---------------------------------------x

Austin Cornelius,

        Plaintiff,

v.

Correction Officer Eugene Millett,
Correction Officer Sergeant J. Noeth,
Superintendent Daniel Martuscello,
Commissioner Brian Fischer,
individually and in their
official capacities,

        Defendants.

---------------------------------------x



COMPLAINT

Civil Action No. 9:11-cv-1370 LEK/GHL

Jury Trial Demanded

## I. PARTIES, JURISDICTION and VENUE

1. Plaintiff Austin Cornelius was confined in the state correctional institution, Coxsackie Correctional Facility, located at 11260 Route 9W, P.O. Box 999, Coxsackie, New York 12051 from January 21, 2011 to May 9, 2011. Plaintiff is currently confined at Lakeview Correctional Facility, 9300 Lake Avenue, P.O. Box T, Brocton, New York 14716.

2. Plaintiff Austin Cornelius is, and was at all times mentioned herein, an adult citizen of the United States and a resident of the state of New York.

3. Defendant Eugene Millett was at all times mentioned herein employed as a New York State Corrections Officer at Coxsackie Correctional Facility.

4. Defendant J. Noeth was at all times mentioned herein employed as a New York State Corrections Officer, with the rank of sergeant, at Coxsackie Correctional Facility.

5. Defendant Daniel Martuscello was at all times mentioned herein employed as the Superintendent of Coxsackie Correctional Facility. As Superintendent of the facility, Defendant manages its day-to-day operations and executes its policies.

6. Defendant Brian Fischer is, and was at all times mentioned herein, the Commissioner of the New York State Department of Correctional Service and Community Supervision. As Commissioner, Defendant is charged with the overall supervision and administration of all New York State Prisons.

7. This action arises under and is brought pursuant to 42 U.S.C. Section 1983 to remedy the deprivation, under color of state law, of rights guaranteed by the Fifth, Eighth and Fourteenth Amendments to the United States Constitution. This Court has jurisdiction over this action pursuant to 28 U.S.C. Section 1331 and 1343.

8. Plaintiff's claims for injuctive relief are authorized by Rule 65 of the Federal Rules of Civil Procedure.

9. This cause of action arose in the Northern District of New York. Therefore, venue is proper under 28 U.S.C. Section 1391(b).

## II.   PREVIOUS LAWSUITS BY PLAINTIFF

10. Plaintiff has also filed an Article 78 challenging the final determination of his disciplinary hearing, which dealt with the same facts involved in this action.

11. Plaintiff, following a prison disciplinary hearing, was found guilty of "assault on staff" among other lesser offenses. On or about July 26, 2011, Plaintiff filed an Article 78 petition challenging this determination in the Albany County Supreme Court, Index Number 4769/2011, under Judge Diane Hook. The case is still pending.

## III. EXHAUSTION OF ADMINISTRATIVE REMEDIES

12. Plaintiff filed a grievance complaint with the facility's Inmate Grievance Resolution Committee, which was denied. Plaintiff then appealed to the facility's Superintendent, which was also denied. Plaintiff then appealed the Superintendent's decision to the Central Office Review Committee, which was also denied. The Central Office Review Committee is the highest level of administrative authority to which an appeal may be directed. Therefore, Plaintiff has exhausted all available administrative remedies.

## IV. STATEMENT OF CLAIM

13. This is a civil rights action filed by Austin Cornelius, a state prisoner, for damages under 42 U.S.C. Section 1983, alleging assault and battery by state corrections officers, cruel and unusual punishment, denial of medical care, wrongful confinement in the Special Housing Unit ("SHU"), and violation of due process in violation of the Fifth, Eighth and Fourteenth Amendments to the United States Constitution.

14. At all relevant times herein, defendants were "persons" for purposes of 42 U.S.C. Section 1983 and acted under color of state law to deprive Plaintiff of his constitutional rights, as set forth in detail below.

## V. STATEMENT OF FACTS

15. On Sunday, April 3, 2011, Plaintiff was housed in the C2-Division Housing Unit at Coxsackie Correctional Facility. At approximately 4:15 P.M., Plaintiff and approximately 39 other inmates, also from the C2-Division Housing Unit, were on their way to the North Messhall for evening meal. Officer Eugene Millett was their escort. As Plaintiff walked past Officer Millett, Plaintiff overheard Officer Millett say the words/numbers "forty, four-oh." Plaintiff then began to recite the words to a song which also contained the words/numbers "forty" and "four-oh."

Officer Millett overheard Plaintiff and assumed that Plaintiff was mimicking him. Officer Millett then stated to Plaintiff, "oh really, you think you're funny? Wait until we get back, it's gonna be me and you!"

16. While in the North Messhall, Officer Millett confronted Plaintiff and said, "Mr. Cornelius, do you know me to be making fun of me?" Plaintiff then tried to explain to Officer Millett that it was just a misunderstanding and offered his apologies to Officer Millett. Officer Millett refused to accept Plaintiff's apologies and then stated, "are your sneakers tied tight?" Plaintiff responded, "no." Officer Millett then stated, "well you better make sure they're tied nice and tight, cause when we get back it's gonna be me and you!"

17. Upon return from the Messhall, Officer Millett ordered Plaintiff to go into the C2-Division Recreation Room. Plaintiff complied. Approximately 30 seconds elapsed while the remaining inmates ascended the staircase and entered the Housing Unit. As the last inmate entered the Housing Unit, Officer Millett approached Plaintiff and punched Plaintiff in the face with a closed fist.

18. Plaintiff became dizzy and stumbled backwards. Officer Millett continued to attack Plaintiff while yelling, "come on, hit me!" Despite being attacked and taunted, Plaintiff did not at any time strike Officer Millett. Instead, Plaintiff tried backing away from Officer Millett, while pleading with Officer Millett to stop hitting him. As Plaintiff was backing away from Officer Millett, Plaintiff lost his right sneaker and fell to the floor. Officer Millett then jumped on top of Plaintiff and began to strike Plaintiff about the face and body using his knees and fists. Corrections Officer Bradley was also present during this event, and although Officer Bradley did not strike Plaintiff, he did nothing to stop Officer Millett from assaulting Plaintiff.

19. Shortly thereafter, Plaintiff was still on the floor being attacked by Officer Millett when several other officers arrived and began to attack Plaintiff. Plaintiff was punched, kicked and struck with

batons repeatedly about the face, head and body. During these events, Plaintiff did not at any time strike any of the officers or put up any resistance. After several minutes, Plaintiff was finally handcuffed behind his back and brought to his feet.

20. Plaintiff was surrounded by about five officers, including defendant Sergeant J. Noeth. Sergeant Noeth then asked Plaintiff, "Why did you assault my officer?" Plaintiff responded, "I didn't assault your officer." Sergeant Noeth and the other officers all began punching Plaintiff about the face and body. Sergeant Noeth repeated the question and when Plaintiff denied assaulting Officer Millett again, Sergeant Noeth and the other officers again began punching Plaintiff. When Sergeant Noeth repeated the question for a third time, Plaintiff then realized that he would continue to be abused until he falsely admitted to assaulting Officer Millett. Plaintiff then responded, "I don't know, I was stupid." Sergeant Noeth was apparently satisfied with this answer. He then ordered two officers to escort Plaintiff to the facility's clinic. Shortly thereafter, Plaintiff was taken to the facility's Special Housing Unit, where he was immediately placed in solitary confinement for 23 hours a day.

21. On Monday, April 4, 2011, Plaintiff received a misbehavior report accusing him of assault on staff, violent conduct, refusing a direct order, creating a disturbance, and interference. The report, which was authored by defendant Sergeant Noeth, stated that Officer Millett was simply attempting to "counsel" Plaintiff when Plaintiff attacked Officer Millett, and that Plaintiff "violently resisted" when officers tried to restrain him. Plaintiff maintains that these are all entirely false accusations and are just an attempt to justify their wrongful conduct.

22. On Thursday, April 7, 2011, a Sergeant Martin appeared at Plaintiff's cell in the SHU and introduced himself as Plaintiff's appointed assistant. Sergeant Martin gave Plaintiff a copy of NYSDOCS Directive No. 4932 and asked Plaintiff to sign a sheet acknowledging receipt of the Directive. Plaintiff signed the sheet and then requested that Sergeant Martin interview

the two witnesses who had overheard Officer Millett threaten Plaintiff in the North Messhall just minutes before the incident. Plaintiff also requested that Sergeant Martin poll the entire C2-Division Housing Unit to see how many inmates had witnessed the incident and how many would be willing to testify on his behalf. Plaintiff also requested that Sergeant Martin obtain the video of the North Messhall from the day of the incident. Plaintiff explained to Sergeant Martin that the video will show that Officer Millett had already reprimanded or "counsel[ed]" Plaintiff while in the Messhall and it would show that Officer Millett was very angry during the confrontation in the Messhall, which would contradict the statements in the misbehavior report that Officer Millett simply wanted to "counsel" Plaintiff. Sergeant Martin pretended to write this information down and then he departed. Plaintiff never saw or heard from Sergeant Martin ever again.

23. Plaintiff's disciplinary hearing commenced on Monday, April 11, 2011. It was at that time that Plaintiff was notified that the two witnesses that he had requested had refused to testify. Sergeant Martin did not obtain the video of the North Messhall, nor did he poll the inmates from the C2-Division Housing Unit. Plaintiff complained to the Hearing Officer that Sergeant Martin didn't do anything at all to help him prepare for the hearing. The Hearing Officer did nothing to remedy this. The Hearing Officer also denied Plaintiff's request to review the video of the North Messhall and to review Officer Millett's medical records pertaining to the injuries he supposedly sustained during the incident and to review past complaints against Officer Millett about abusive behavior towards inmates, claiming that these records were irrelevant.

24. Plaintiff also requested to view the photographs that were taken of Officer Millett's injuries. The Hearing Officer produced several photos which only showed someone's fingers and forearm. The person's face could not be seen in any of the photos. Therefore, there was no way to identify the person in the photos and no way to verify whether or not the injuries depicted in the photos were sustained by Officer Millett. Plaintiff objected to the validity of the photos on the grounds that it could be "anybody" in the photos. Plaintiff also objected to being denied adequate and effective assistance and to being denied evidence that may

6

have supported his defense. At the conclusion of the hearing, Plaintiff was found guilty of all five rule violations, and received 12 months in solitary confinement, as well as 12 months loss of commissary, packages, phone and recreation. Plaintiff was also recommended for loss of 12 months good time credit.

## VI. CAUSE(s) OF ACTION

### COUNT ONE:
Assault and Battery, Cruel and Unusual Punishment

25. Defendant Officer Eugene Millett wantonly and sadistically inflicted pain and injuries upon Plaintiff without cause or justification. Defendant Millett acted with evil intent and callous indifference to Plaintiff's rights to be free from assault, and to be free from cruel and unusual punishment. A violation of clearly established rights which a reasonable person would have known.

26. Defendant Sergeant J. Noeth wantonly and sadistically inflicted pain and injuries upon Plaintiff without cause or justification. Defendant Noeth acted with evil intent and callous indifference to Plaintiff's rights to be free from assault, and to be free from cruel and unusual punishment. A violation of clearly established right which a reasonable person would have known.

27. Defendant Superintendent Daniel Martuscello exercised deliberate indifference to Plaintiff's rights to be free from assault, and to be free from cruel and unusual punishment. Plaintiff had written several letters to defendant Martuscello and had filed a grievance complaining about being physically abused by his subordinates. Defendant Martuscello ignored Plaintiff's letters and denied Plaintiff's grievance complaint. Defendant Martuscello was grossly negligent in that he failed to adequately supervise his subordinates, and he failed to investigate complaints about mistreatment of inmates by his staff, and he failed to take action to remedy his subordinates' misconduct.

28. As a result of defendants' actions, Plaintiff suffers from injuries to both of his shoulders, for which he must constantly take pain medication, and for which he will soon undergo physical therapy. Plaintiff also suffers from recurring headaches, dizziness, blurred vision, physical and mental and emotional distress.

## COUNT TWO:
### Violation of Due Process, Wrongful Confinement

29. Defendant Commissioner Brian Fischer exercised deliberate indifference to Plaintiff's due process rights by affirming the decision to place Plaintiff in solitary confinement. It is well established that a prisoner who is confined to his/her cell pending a Tier III disciplinary hearing has the right to receive adequate and effective assistance to prepare for his/her defense, as well as the right to a fair, impartial and unbiased hearing officer. Plaintiff had raised the issue of inadequate and ineffective assistance in his administrative appeal to defendant Fischer. Plaintiff also informed defendant Fischer that the Hearing Officer was unfair, partial and biased for denying Plaintiff's requests to present relevant evidence which would have supported his defense, and that there may be instances where the Hearing Officer was conspiring to use fabricated evidence to support falsified misbehavior reports against inmates. Despite having this knowledge, defendant Fischer still chose to uphold the decision to wrongfully confine Plaintiff in segregation.

30. As a result of defendant's actions and/or inactions, Plaintiff has so far spent more than 200 days in solitary confinement, and was deprived of the already limited liberty and property enjoyed by prisoners without enough procedural protection.

## COUNT THREE:
### Inadequate Medical Care, Cruel and Unusual Punishment

31. Defendant Superintendent Daniel Martuscello exercised

deliberate indifference to Plaintiff's rights to adequate medical care, and to be free from cruel and unusual punishment. Plaintiff had written several letters to defendant Martuscello and filed a grievance complaining about being denied treatment for the injuries he sustained during the incident with defendant Officer Millett. Defendant Martuscello ignored Plaintiff's letters, and denied Plaintiff's grievance complaint.

32. As a result of defendant's actions and/or inactions, Plaintiff was forced to endure undue pain and suffering for several weeks.

## VII. PRAYER FOR RELIEF

33. Plaintiff requests an injunction compelling defendants to provide him with adequate medical care, and to stop physically abusing him.

34. Plaintiff seeks punitive damages against defendant Officer Eugene Millett, defendant Sergeant J. Noeth and defendant Superintendent Daniel Martuscello for their willfull and malicious conduct. Plaintiff also seeks punitive damages against defendant Commissioner Brian Fischer for his willful and malicious conduct in confining Plaintiff to segregation after a hearing in which he was denied basic rights to due process of law.

35. Plaintiff seeks compensatory damages for the injuries he sustained, and for past and future pain and suffering, and physical, mental and emotional distress. Plaintiff also seeks compensatory damages for the loss of privileges and quality of life in his prison living conditions, and loss of the limited liberty enjoyed by prisoners, resulting from his segregated confinement, in that he was confined for 23 hours a day in a cell roughly 60 feet square, and was deprived of most of his property as well as the ability to work, attend educational and vocational programs, watch television,

associate with other prisoners, attend outdoor recreation in a congregate setting with the ability to engage in sports and other congregate recreational activities, and attend religious services and meals with other prisoners.

WHEREFORE Plaintiff, Austin Cornelius, prays for judgement in his favor and damages against all defendants in an amount sufficient to compensate him for the pain and suffering inflicted upon him due to the deliberate indifference and intentional misconduct of defendants, but in no event less than $500,000, together with his attorney's fees, and such additional relief as the Court may deem just and proper.

Respectfully submitted,

Austin Cornelius - 10A3122
Austin Cornelius, Plaintiff
Lakeview Correctional Facility
9300 Lake Avenue, P.O. Box T
Brocton, New York 14716

I declare under penalty of perjury that the foregoing is true and correct.

Austin Cornelius - 10A3122
Austin Cornelius, Plaintiff

Dated: November 14, 2011